# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OPEN RANGE COMMUNICATIONS INC., | Case No. 11-_____ (___) |
| Debtor.[1] | |

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves this Court for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"): (i) prohibiting utility providers (each a "Utility Provider" and collectively, the "Utility Providers") from altering, refusing, or discontinuing service to the Debtor, (ii) deeming the Utility Providers adequately assured of future performance; and (iii) establishing procedures for resolving requests for additional adequate assurance of future payment and authorizing the Debtor to provide adequate assurance of future payment to Utility Providers. In support of the Motion, the Debtor relies upon and fully incorporates by reference the Declaration of Chris Edwards, Chief Financial Officer of Open Range Communications Inc., In Support of the Debtor's Chapter 11 Petition and First Day Motions (the "Edwards Declaration"). In further support of this Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 0894.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested in this Motion are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of its bankruptcy case, is set forth in the Edwards Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

5. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No official committee has been appointed in this Chapter 11 case.

## RELIEF REQUESTED

7. By this Motion, the Debtor seeks entry of an Interim Order, attached hereto as Exhibit A, and a Final Order, attached hereto as Exhibit B, (i) prohibiting the Utility Providers from altering, refusing or discontinuing service to the Debtor on account of prepetition invoices, including the making of demands for security deposits or accelerated payment terms; (ii) providing that the Utility Providers have "adequate assurance of payment" within the meaning of

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Edwards Declaration.

49524/0001-7923506v3

section 366 of the Bankruptcy Code, based, inter alia, on the Debtor's establishment of a segregated account containing an amount equal to fifty percent (50%) of the Debtor's estimated average monthly cost of utility service, which may be adjusted by the Debtor for reasons specified herein following the final hearing on this Motion; and (iii) establishing procedures for resolving requests for additional adequate assurance and authorizing the Debtor to provide adequate assurance of future payment to the Utility Providers.

8. Uninterrupted Utility Services (as defined below) are essential to the Debtor's operations and the success of the Debtor's efforts in this chapter 11 case. A disruption of the Utility Services at any of the Debtor's facilities would likely be costly to the Debtor and harmful to its business, as the Debtor would be forced from the outset of this Chapter 11 case to focus on finding replacement rather than a seamless transition into chapter 11 and maintaining employee morale. Moreover, the business disruption that would likely result from interruption of the Utility Services would damage the Debtor's customer relationships and revenues, and would adversely affect the Debtor's chapter 11 efforts, to the detriment of its estate, creditors, and employees. It is therefore critical that Utility Services to the Debtor continue uninterrupted.

### A. The Utility Providers

9. In connection with the operation of its business, the Debtor incurs utility expenses in the ordinary course of business for, among other things, electricity, gas, internet, and telephone, and other similar services (the "Utility Services"). On a monthly basis, the Debtor spends approximately $68,538 for various Utility Services, and all payments made to Utility Providers are for past services. These Utility Services are provided by approximately 30 Utility

3

Providers in the United States, with which in some cases the Debtor has multiple accounts. A list of these Utility Providers is attached hereto as Exhibit C.[3]

10. Furthermore, as set forth in the Edwards Declaration, the Debtor is a broadband wireless internet provider whose primary focus is delivering high speed wireless internet and digital phone services to hundreds of un-served and underserved communities across the United States. Consequently, the Debtor has contractual relationships with several other telecommunications providers as part of its ordinary course business. Such telecommunications providers have not been included in the Utility List as the Debtor believes these providers are all under contract to perform their services. However, as set forth in the footnote 3 below, the Debtor reserves the right to amend the Utility List to designate a telecommunications provider as a Utility Provider.

**B.   The Proposed Adequate Assurance**

11. Section 366(a) of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing service to a debtor for the first twenty (20) days of a bankruptcy case. However, pursuant to section 366(c)(2) of the Bankruptcy Code, in a Chapter 11 context, a utility provider may refuse or discontinue service to a debtor after the first thirty (30) days if the debtor has not furnished the utility provider with adequate assurance of future payment.

12. The Debtor intends to pay all post-petition obligations owed to the Utility Providers in a timely manner, consistent with the ordinary course of operating its business post-petition. To provide adequate assurance of payment for future services to the Utility Providers as

---

[3] While the Debtor has exercised its best efforts to list all of its Utility Providers and account numbers in Exhibit C, it is possible that certain Utility Providers and/or account numbers may have been omitted from this list. The Debtor reserves the right to amend Exhibit C to add any Utility Providers and/or account numbers that were omitted therefrom and to request that the relief requested herein apply equally to all such entities and accounts. Furthermore, the relief requested herein shall apply to all of the Debtor's accounts with every Utility Provider listed in Exhibit C regardless of whether or not such accounts are listed in Exhibit C. In addition, the Debtor reserves the right to argue that any of the entities now or hereafter listed in Exhibit C are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

set forth in section 366(c) of the Bankruptcy Code, however, the Debtor proposes to deposit an initial sum equal to fifty percent (50%) of the Debtor's estimated average monthly cost of Utility Services (the "Adequate Assurance Deposit"), into an interest-bearing, newly-created, segregated account (the "Adequate Assurance Account") within twenty (20) days of the Petition Date, pending further order of this Court. Because the Debtor's approximate monthly spending on Utility Services is approximately $68,538, the Adequate Assurance Deposit will be approximately $34,269.

13. The Debtor further proposed to maintain the Adequate Assurance Account with a minimum balance equal to fifty percent (50%) of the Debtor's estimated average monthly cost of Utility Services through the final hearing on this Motion. Thereafter, the Debtor proposes to adjust the amount in the Adequate Assurance Account to reflect the following factors: (i) the termination of Utility Services by the Debtor regardless of any Additional Assurance Requests (as defined below), and (ii) agreements with the Utility Providers. These adjustments will permit the Debtor to maintain the Adequate Assurance Account with an amount that consistently provides the Utility Providers that do not otherwise hold deposits or security for its Utility Services with a half-monthly deposit on account of such services.

14. The Debtor submits that the Adequate Assurance Deposit (together, the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers.

15. The Proposed Adequate Assurance ensures that all Utility Providers will have adequate assurance of payment throughout this case, and the Debtor believes that no other or further assurance is necessary. If, however, any Utility Provider believes adequate assurance is

required beyond the protections described herein, it must request such assurance pursuant to the procedures described below (the "Adequate Assurance Procedures").

## C. Proposed Adequate Assurance Procedures

16. To ensure that all Utility Providers receive adequate notice of the Proposed Adequate Assurance, the Debtor proposes that the Court approve and adopt the following Adequate Assurance Procedures:

   a) The Debtor will serve a copy of this Motion, together with the proposed final utility order, which includes the proposed procedures, on each Utility Provider within three (3) business days after entry of the Interim Order by the Court.[4]

   b) If a Utility Provider is not satisfied with the Adequate Assurance Deposit provided by the Debtor, the Utility Provider must serve a request for additional adequate assurance (the "Additional Assurance Request") at the following addresses: (i) Open Range Communications, Inc., 6430 S. Fiddlers Green Circle, Suite 500, Greenwood Village, CO 80111, Attn: Chris Edwards, and (ii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Sanjay Bhatnagar, Esq.

   c) Any Additional Assurance Request must (i) be in writing; (ii) set forth the location(s) for which Utility Services are provided; (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits, (iv) set forth why the Utility Provider believes that the Proposed Adequate Assurance is not sufficient additional adequate assurance of future payment; (v) set forth what the Utility Providers would accept as satisfactory adequate assurance of payment, and (vi) set forth a fax and electronic mail address to which the Debtor may respond to the Additional Adequate Assurance Request.

   d) Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request, if the Debtor, in its discretion, determine that the Additional Assurance Request is reasonable.

---

[4] In addition, the Debtor seeks authority, without further order of this Court, to supplement the list of Utility Providers on Exhibit C if any Utility Provider has been inadvertently omitted. If the Debtor supplements the list subsequent to the filing of this Motion, the Debtor will serve a copy of this Motion and the proposed Final Order on any Utility Provider (the "Supplemental Utility Provider") that is added to the list by such supplement (the "Supplemental Service").

6

e)   If the Debtor determines that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider, the Debtor will contest the Utility Provider's request pursuant to section 366(c)(3) at a hearing (the "Determination Hearing") to be held on or before the day that is thirty (30) days after the Petition Date, or such other date as the Debtor and the Utility Provider may otherwise agree. Such hearing will be without prejudice to the right of any Utility Provider to seek relief separately under section 366(c)(3) of the Bankruptcy Code.

f)   The Determination Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Deposit and the additional adequate assurance of payment requested by the Utility Provider should be modified pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

g)   Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be restrained from altering, refusing, or discontinuing service to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

h)   The Adequate Assurance Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make an Additional Assurance Request.

17. The Debtor requests a final hearing on this Motion to be held within twenty-five (25) days of the Petition Date to ensure that, if a Utility Provider argues that it can unilaterally refuse service to the Debtor on the thirty-first (31st) day after the Petition Date, the Debtor will have the opportunity, to the extent necessary, to request that the Court make such modifications to the Adequate Assurance Procedures in time to avoid any potential termination of Utility Services.

## BASIS FOR RELIEF REQUESTED

18. The starting point for determining whether proposed adequate assurance for utilities is in fact adequate is section 366 of the Bankruptcy Code. While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security

7

remains within the reasonable discretion of the Court.[5] It is well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. See, e.g., In re Caldor, Inc.-NY, 199 B.R. 1, 3 (S.DN.Y. 1996) (stating that "[s]ection 366(b) requires [a] Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. ED. Pa. 1987) (stating that section 366(b) "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances ..."). Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. See e.g., Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.), 12 B.R. 156, 158 (1st Cir. B.A.P. 1981). Further, courts have recognized that, in determining what constitutes "adequate" assurance, a bankruptcy court must "focus upon the need of the utility for assurance, and ... require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d 646, 650 (2d Cir. 1997) (quoting Penn Jersey, 72 B.R. at 985).

19. The adequate assurance proposed to be provided by the Debtor in this Motion gives the Utility Providers ample assurance of payment in a well-precedented manner. The facts and circumstances surrounding the Debtor demonstrate that it operates a well-established business with ample liquidity to honor its post-petition obligations to the Utility Providers. To bolster the Utility Providers' assurance of payment even further, the Debtor proposes to make the

---

[5] Section 366(c)(1)(A) provides that "assurance of payment" may be in the form of cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).

Adequate Assurance Deposit, the initial amount of which will equal fifty percent (50%) of its average monthly expenditures for all Utility Services (subject to adjustment as described in paragraph 12, supra, after the date of the final hearing on the motion), into an interest-bearing, newly-created, segregated account for the express purposes of providing adequate assurance to the Utility Providers. This segregated fund provides concrete assurance of the Debtor's payment of its future obligations to the Utility Providers. That assurance alone satisfies the requirement in section 366 for adequate assurance of payment.

20. The Debtor proposes to protect the Utility Providers further by establishing the Adequate Assurance Procedures provided herein, under which any Utility Provider can request additional adequate assurance in the event that it can demonstrate facts and circumstances that it will provide post-petition services to the Debtor that would merit greater protection. Although the Debtor does not believe that any Utility Provider should require assurance of payment beyond that afforded by the Adequate Assurance Payment, the centralized Adequate Assurance Procedures ensure that any requests therefor can be addressed in a timely fashion by the Debtor without the submission of piecemeal, varied requests to the Court over time.

21. The mechanisms proposed in this Motion strike a reasonable, common-sense balance between providing "adequate assurance of payment for utility service that is satisfactory" as set forth in section 366(c)(2) of the Bankruptcy Code, on the one hand, and the Debtor's well-recognized need to conserve cash for use in its business on the other. The need to strike this balance has been acknowledged by courts and commentators since the 2005 amendments to section 366. See, e.g., In re Syroco. Inc., 374 B.R. 60, 61-62 (Bankr. D.P.R. 2007) (holding that a court may order assurance of payment to a utility provider to be adequate absent objection from the utility provider); In re Beach House Property, LLC, 2008 WL 961498

(Bankr. S.D. Fla. 2008) (holding that a court may determine the form of adequate assurance to be provided to a utility provider absent agreement of the parties on the issue). In light of the need to strike that balance, section 366 should "be read to require a utility to bargain in good faith with the trustee or debtor in possession before electing to discontinue service thereafter." See Bertrand Pan & Jennifer Taylor, Sustaining Power: Applying 11 U.S.C. § 366 in Chapter 11 Post-BAPCPA, 22 Bankr. Dev. J. 371, 382, 389 (2006) (stating that Congress's intent could not have been to allow a utility unfettered discretion in determining what constitutes a satisfactory assurance of payment, because such an interpretation would be "completely inconsistent with the purpose of 366," and that "reading 366(c) to require a utility to negotiate in good faith…would enable courts to give utilities deference in the negotiating process, but also prevent utilities from refusing to negotiate or making unreasonable demands in the negotiation process").

22. The Debtor proposes the Adequate Assurance Procedures as a mechanism to facilitate good faith bargaining between the Debtor and the Utility Providers and as a means to ensure that the determination of whether adequate assurance is satisfactory to the Utility Providers is balanced and reasonable in the event that any of the Utility Providers believe they are entitled to protection beyond that afforded by the proposed Adequate Assurance Deposit. The Adequate Assurance Procedures also ensure that the Utility Providers are not prejudiced by the continuation of the Utility Services, given that they have a full and fair opportunity on notice to make any requests for additional assurance of payment to the Bankruptcy Court.

23. In addition to its powers to grant the relief sought in this Motion under section 366, this Court also has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

10

105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 2008). For all of the reasons described herein, the proposed Adequate Assurance Procedures protect the Debtor without materially prejudicing the Utility Providers. Therefore, the proposed Adequate Assurance Procedures implement section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

24. This Court has previously approved the establishment of an adequate assurance deposit equal to 50% of monthly expenditures on utilities and comparable adequate assurance procedures in other Chapter 11 cases. See, e.g., In re Leslie Controls, Inc., Case No. 10-12199 (Bankr. D. Del. July 14, 2010) (CSS); In re True Temper Sports, Inc., et al., Case No. 09-13446 (PJW) (Bankr. D. Del. Oct. 9, 2009 (interim order), Oct. 30, 2009 (final order)); In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (MFW) (Bankr. D. Del. June 18, 2009 (interim order), July 19, 2009 (final order)); In re Ritz Camera Centers, Inc., Case No. 09-10617 (MFW) (Bankr. D. Del. Feb. 24, 2009 (interim order), March 19, 2009 (final order)); In re Smurfit-Stone Container Corporation, Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009 (interim order), Feb. 23, 2009 (final order)); In re Tribune Company, et al., Case No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008 (interim order), Jan. 15, 2009 (final order)). The relief sought in this Motion thus represents a well-precedented and reasonable means of adequately assuring payment for the Utility Services while ensuring that the Debtor's business are permitted to operate without the interruption of such services.

25. Furthermore, the Debtor requests authorization to continue using its automatic debit payment system to pay Utility Providers for Utility Services provided after the Petition

49524/0001-7923506v3

Date. The Debtor has approximately 23 Utility Providers and 419 separate accounts. Considering the high number of Utility Providers and accounts, the Debtor's reliance on Utility Services for its business, and the administrative burden of separately arranging payment for each Utility Provider, the Debtor's practice has been to pay certain Utility Providers by automatic debit transaction from its main operating account.

26. The Debtor should be authorized to continue payment by automatic debit transaction. Denying the Debtor the ability to pay Utility Providers by automatic debit transaction, in accordance with its prepetition practices, would create unnecessary administrative problems and additional costs. Indeed, it would be unduly burdensome on the Debtor, who has limited staffing available, to separately arrange for payment on each account. Any disruption to the Debtor's Utility Services would have a severe and adverse effect upon the Debtor's estate. Consequently, maintenance of automatic debit transactions is essential and is in the best interests of all creditors and other parties-in-interest.

27. To the extent Fed. R. Bankr. P. 6004(h) is applicable to this Motion, the Debtor also seeks a waiver of the fourteen-day stay under Fed. R. Bankr. P. 6004(h).

## NOTICE

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee, (ii) the United States Department of Agriculture, (iii) counsel to One Equity Partners III, L.P., (iv) the United States Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) the Office of the United States Attorney for the District of Delaware, (vii) those entities or individuals listed on the Debtor's list of thirty largest unsecured creditors, and (viii) the Utility Providers. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is necessary.

49524/0001-7923506v3

29. Notice of entry of the Interim Order and notice of the hearing on the final relief requested herein also will be provided to the Utility Providers, each other party that the Debtor believes could be affected by this Motion, and all other parties required to receive service under Rule 2002-1(b) of the Local Rules.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders substantially in the form attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, and grant such other and further relief as the Court deems just and proper.

Dated: October 6, 2011
Wilmington, Delaware

**COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**

By: _/s/ Marion Quirk_
Norman L. Pernick (No. 2290)
Marion M. Quirk (No. 4136)
Sanjay Bhatnagar (No. 4829)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Proposed Counsel for the Debtor and Debtor in Possession

13