UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OPEN RANGE COMMUNICATIONS, INC., | Case No. 11-13188 (KJC) |
| Debtor. | Hearing Date: 10/11/11 at 11:00 a.m.<br>Related to Docket Nos. 3, 4, 5, 6, 7, 8, 9 & 11 |

-----------------------------------------------------------------x

**LIMITED OBJECTION TO CERTAIN FIRST DAY MOTIONS
AND DEBTOR-IN-POSSESSION FINANCING MOTION**

Alvarion, Inc. ("Alvarion"), by and through undersigned counsel, hereby files this limited objection to (A) certain first-day motions filed by Open Range Communications, Inc. (the "Debtor") by which the Debtor seeks authority to make payments to third-parties,[1] and (B) to the Debtor's Debtor-in-Possession Financing Motion (Dkt. Entry No. 11) (the "DIP Motion"), and in support states as follows:

## BACKGROUND

1. On or about March 25, 2008, the United States Department of Agriculture Rural Utility Service (the "RUS") announced that it had approved a loan to the Debtor in the amount of $267 million (the "Loan"). See www.rurdev.usda.gov/ne/FY08OpenRangeBroadband.doc. The purpose of the Loan was to provide broadband service using Wi-Max technology to 518 rural communities located in 17 States under the Rural Development Broadband Loan and Loan Guarantee Program (the "Program").

---

[1] Alvarion objects to the following motions: (i) Debtor's Application to Appoint Claims/Noticing Agent (Dkt. Entry No. 3); (ii) Debtor's Motion for Continued Use of Cash Management System (Dkt. Entry No. 4); (iii) Debtor's Motion to Pay Employee Wages (Dkt. Entry No. 5); (iv) Debtor's Motion to Continue Customer Programs (Dkt. Entry No. 6); (v) Debtor's Motion to Pay Prepetition Taxes (Dkt. Entry No. 7); (vi) Debtor's Utilities Motion (Dkt. Entry No. 8); (vii) Debtor's Critical Vendors Motion (Dkt. Entry No. 9) (collectively, the "First Day Motions").

5196438

2. Subsequently, Alvarion and the Debtor entered into a Master Services Agreement -- WIMAX (the "MSA") dated June 11, 2009, wherein Alvarion would provide materials and services for the construction of certain wireless telecommunications systems to be funded by RUS pursuant to the Program. The MSA and selection of Alvarion as the Wi-Max facilities provider were approved by the RUS. To reflect this approval, RUS, Debtor and Alvarion entered into certain agreements to effectuate their collective arrangement. These agreements are contained in several RUS Form 397 and 398 contracts and a Master Purchase Agreement for CPE.

3. Pursuant to the terms of the Program, RUS required the Debtor to establish a segregated "deposit account" into which the RUS loan proceeds would be deposited. *See RUS Bulletin 1738-2: Rural Broadband Access Loan and Loan Guarantee Advance and Construction Procedures Guide* (the "RUS Bulletin") at p. 28, ¶4. This account is referred to by the Debtor in its papers as the "RUS Account". *See Debtor's Motion for Continued Use of Cash Management System* (Dkt. Entry No. 4) at ¶12.

4. The loan agreement between the Debtor and RUS, and the terms of the Program, required that all funds advanced by RUS be advanced directly into the RUS Account, and further that monies funded by RUS into the RUS Account were to be used "solely for the purpose approved in the loan application and shall be withdrawn from time to time only as agreed to by RUS." *See RUS Bulletin 1738-2* at p. 28, ¶4. Further, the Program required that the Debtor "shall use funds in its construction funds only to make disbursements approved by RUS." *Id.; see also* 7 C.F.R. § 1738.253(b) ("Borrowers must comply with all terms, conditions, affirmative covenants, and negative covenants contained in the loan documents.").

5. There was approximately $4.9 million in the RUS Account on the Petition Date. *See Debtor's Motion for Continued Use of Cash Management System* (Dkt. Entry No. 4) at ¶12. Upon information and belief, all of these funds had been funded by RUS pursuant to the Program.

6. Alvarion has performed under the MSA. Upon information and belief, RUS has approved certain capital expenditures owing by the Debtor to Alvarion and has advanced funds into the RUS Account for the sole and exclusive purpose that such monies be used to make payment to Alvarion. To date, these funds have not been paid to Alvarion, and upon information and belief, are still held in the RUS Account.

## LIMITED OBJECTION TO THE MOTIONS

7. The funds held by the Debtor in the RUS Account are being held in trust for the benefit of Alvarion and similarly situated vendors and contractors. These funds are not property of the Debtor's bankruptcy estate, and the Debtor has no right to use or disburse these funds except to those vendors and contractors for whose benefit the funds were deposited by RUS.

8. By the First Day Motions, the Debtor seeks authority to make payments to third parties as more particularly described in such motions. Alvarion objects to the First Day Motions to the limited extent that the Debtor intends to pay these third parties with funds held in the RUS Account. Instead, any payments permitted by this Court should be made with non-RUS Account funds.

9. Furthermore, Alvarion objects to the DIP Motion to the extent that the Debtor seeks to grant to the Lender (as that term is defined in the DIP Motion) a lien upon the funds held in the RUS Account. The RUS Account funds are not property of the estate and the Debtor has no right to pledge said funds to secure the debtor-in-possession financing.

| | |
|---|---|
| Dated: October 11, 2011 | CONNOLLY BOVE LODGE & HUTZ LLP |
| | *[signature]* |
| | Jeffrey C. Wisler (No. 2795)<br>Marc J. Phillips (No. 4445)<br>The Nemours Building<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899<br>Tel: (302) 658-9141<br>Fax: (302) 658-0380<br>E-mail: jwisler@cblh.com<br>E-mail: mphillips@cblh.com |

-and-

PATTON BOGGS LLP

Mark A. Salzberg (*pro hac vice pending*)
2550 M Street, N.W.
Washington, D.C. 20037
Tel: (202) 457-5242
Fax: (202) 457-6315
E-mail: msalzberg@pattonboggs.com

*Counsel for Alvarion, Inc.*

#4503433v1