**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| OPEN RANGE COMMUNICATIONS INC., | : | Case No. 11-13188 (KJC) |
| Debtor.[1] | : | **Related Docket No. 20** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), AND 364(e) AND FED. R. BANKR. P. 2002, 4001, 9014 AND 9019 (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING AND (II) SCHEDULING A FINAL HEARING**

Upon the Motion[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of interim and final orders, pursuant to sections 105(a), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9014 and 9019, and Local Rules 2002-1 and 4001-2, authorizing the Debtor to, among other things, (i) incur postpetition indebtedness, (ii) grant security interests and superpriority claims, and (iii) release claims; and the Debtor having, more specifically sought entry of this Interim Order:

(a) approving the Debtor's entry into the Credit Agreement attached to the Motion as Exhibit B and authorizing it to borrow up to $4 million from OEP Open Range Holdings, LLC (the "Lender") subject to the Budget included in the Credit Agreement and separately attached hereto as Exhibit 1;

(b) affording the Lender the protections of sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code with respect to the obligations of the Debtor under the

---

1 The last four digits of the Debtor's federal tax identification number are 0894.

2 Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion or the Credit Agreement, as applicable.

Credit Agreement (collectively, the "DIP Obligations") by specifically ordering that such obligations are:

(i) afforded superpriority administrative claim status under section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses of the kind specified in section 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, subject and subordinate only to, upon the occurrence and during the continuance of an Event of Default, the payment of the Carve-Out (as defined below) on the terms and conditions set forth herein;

(ii) subject to the Carve-Out, secured (x) pursuant to section 364(c)(2) of the Bankruptcy Code, by first priority perfected Liens on and security interests in any of the DIP Collateral that is not subject to a Lien or security interest on the Petition Date (excluding, however, avoidance actions under chapter 5 of the Bankruptcy Code); and (y) pursuant to section 364(c)(3) of the Bankruptcy Code, by second or other junior priority perfected Liens on and security interests in any of the DIP Collateral that is subject to a Lien or security interest on the Petition Date (excluding, however, avoidance actions under chapter 5 of the Bankruptcy Code);

(c) granting the Lender and its affiliates and representatives a Release of all claims held by or on behalf of the Debtor relating to any acts or omissions arising during the six-month period preceding the Petition Date, subject to investigation by the Debtor and a timely and successful Challenge;

(d) modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the Credit Agreement and this Interim Order;

(e) confirming the Lender's good faith in furnishing the DIP Loan and the attendant applicability of the protections afforded by section 364(e) of the Bankruptcy Code;

(f) scheduling the Final Hearing on the Motion to be held within thirty (30) days after the Petition Date to consider entry of the Final Order, which would, if entered without court-ordered or mutually-agreed modification, grant all of the relief requested in

the Motion on a final basis, including the Debtor's request that the Lender be granted first priority priming Liens and security interests on all DIP Collateral pursuant to section 364(d)(1) of the Bankruptcy Code;

(g) waiving any applicable stay (including under Bankruptcy Rule 6004 and any applicable Local Rules) and providing for immediate effectiveness of this Interim Order; and

After due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND** that:

A. This Court has jurisdiction over this chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

B. An interim hearing on the Motion was held and concluded before this Court on October 11, 2011 (the "Interim Hearing") and based on the record presented to the Court by the Debtor it appears that the interim relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest and is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and is essential for the continued operation of the Debtor's business.

C. The Debtor does not have sufficient available sources of capital and financing to preserve its assets without the DIP Loans. In the absence of immediate access to the DIP Loans, the value of the estate would deteriorate rapidly and serious and irreparable harm to the Debtor and its estate, customers and other stakeholders would occur. The preservation, maintenance and enhancement of the value of the Debtor are of the utmost significance and importance to a sale of

the Debtor's assets in a single transaction or series of transactions under section 363 of chapter 11 of the Bankruptcy Code (the "363 Sale") or to a controlled wind down and disposition of assets.

D. Financing on a postpetition basis is not otherwise available without the Debtor (i) granting to the Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kind specified in section 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, subject to the Carve-Out and (ii) securing, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, such indebtedness and obligations with Liens on and security interests in all of the Debtor's assets as described below, subject to the Carve-Out.

E. The Notice of the Interim Hearing and the Motion was served on (a) the Office of the United States Trustee, (b) the United States Department of Agriculture, (c) counsel to One Equity Partners, III, L.P. and the Lender, (d) the United States Securities and Exchange Commission, (e) the Internal Revenue Service, (f) the Office of the United States Attorney for the District of Delaware, (g) those entities or individuals listed on the Debtor's list of thirty largest unsecured creditors, and (h) the Debtor's cash management banks; and notice has been provided pursuant to section 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c).

F. Based on the record presented to the Court by the Debtor at the Interim Hearing, it appears the Credit Agreement has been negotiated in good faith and at arm's length between the Debtor and the Lender, and any credit extended, issued or made to Debtor pursuant to the Credit Agreement shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of section 364(e) of the Bankruptcy Code.

G. Based on the record presented to the Court by the Debtor at the Interim Hearing, the terms of the Credit Agreement to be approved on an interim basis by this Interim Order appear to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment, consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The Motion and this Interim Order comply with Local Rule 4001-2. The permission granted herein to enter into the Credit Agreement on the interim terms contained herein and to obtain funds thereunder on an interim basis pending the Final Hearing and entry of the Final Order is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interest of the Debtor's estate and its creditors and customers as its implementation will, *inter alia*, allow for the Debtor to preserve the value of its assets and enhance the Debtor's prospects for a successful 363 Sale or controlled wind down.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED** that:

1. The Motion is granted on an interim basis, subject to the terms and conditions set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.

2. The terms and provisions of the Credit Agreement to be approved on an interim basis are hereby approved on an interim basis and the Debtor is expressly authorized and empowered to execute and deliver to the Lender the Credit Agreement and to obtain the DIP



NY\1870522.8

Loans. Additionally, the Debtor is authorized and directed to comply with and perform all of the terms and conditions of the Credit Agreement and to repay amounts borrowed with interest to the Lender in accordance with and subject to the terms and conditions set forth in the Credit Agreement and this Interim Order.

3. The Debtor is expressly authorized to borrow from the Lender, on the terms and subject to the conditions set forth in the Credit Agreement and this Interim Order, a principal amount not to exceed $4,000,000 in the aggregate, subject to weekly borrowing requests and in accordance with the Budget. The Debtor is authorized to use the proceeds of the DIP Loans in the operation of its business, provided that the proposed DIP Loans are consistent with the terms of the Credit Agreement and this Interim Order and will only be used to pay, when due, the expenses set forth in the Budget.

4. For purposes of this Interim Order, the DIP Obligations shall be:

> a. Claims entitled to the benefits of section 364(c)(1) of the Bankruptcy Code, having a superpriority over any and all administrative expenses of the kind specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of Final Order), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code (the "Superpriority Claims"), subject and subordinate only to, upon the occurrence and during the continuance of an Event of Default, the payment of the Carve-Out (defined below);
>
> b. Subject to the Carve-Out, secured pursuant to section 364(c)(2) of the Bankruptcy Code by first priority perfected Liens on and security interests in any of the DIP Collateral that is not subject to a Lien or security interest on the Petition Date (excluding, however, avoidance actions under chapter 5 of the Bankruptcy Code); and
>
> c. Subject to the Carve-Out, secured pursuant to section 364(c)(3) of the Bankruptcy Code by second or other junior priority perfected Liens on and security interests in any of the DIP Collateral that is subject to a Lien or security interest on the Petition Date (excluding, however, avoidance actions under chapter 5 of the Bankruptcy Code);

provided, however, that the DIP Collateral shall not include the "RUS Account" or the "Escrow," as such terms are used in the Order (I) Authorizing the Continued Use of Existing Cash Management System, (II) Authorizing the Continued Use of Existing Bank Accounts and Business Forms, and (III) Waiving the Requirements of 11 U.S.C. § 345(b) on an Interim Basis, without prejudice as to whether or not the RUS Account or the Escrow is property of the Debtor's estate.

5. The Liens on and security interests in the DIP Collateral granted pursuant to this Interim Order and the Credit Agreement shall be referred to as the "DIP Liens." The DIP Liens are deemed to constitute valid, enforceable, unavoidable and duly perfected security interests and liens, and the Lender is not required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens does not affect the validity, enforceability, unavoidability, perfection or priority of the DIP Liens. If, however, the Lender shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such DIP Liens, the Debtor is directed to cooperate with and assist in such process. The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date this Court enters this Interim Order.

6. Notwithstanding any provision of this Interim Order or the Credit Agreement to the contrary, subject to entry of the Final Order, the DIP Liens and Superpriority Claims

granted to the Lender pursuant to the Credit Agreement and this Interim Order shall be subject and subordinate to a "Carve-Out." For purposes of this Interim Order, the "Carve-Out" means (i) all fees required to be paid to the U.S. Trustee and to the Clerk of the Bankruptcy Court pursuant to section 1930(a) of title 28 of the United States Code; *plus* (ii) the unpaid fees and expenses of retained professionals of the Debtor employed pursuant to sections 327, 328, and 363 of the Bankruptcy Code (including approved ordinary course professionals) (the "Debtor's Professionals") that are incurred prior to the Carve-Out Trigger Date (as defined herein), and including amounts incurred but not invoiced or approved prior to the Carve-Out Trigger Date, but not exceeding the amounts therefor contained in the Budget (provided that all such fees and expenses are payable under sections 330 and 331 of the Bankruptcy Code and pursuant to an order of the Court); *plus* (iii) without duplication of the amounts described in clause (ii) above, the fees and expenses of the Debtor's Professionals to be incurred after the Carve-Out Trigger Date and that remain unsatisfied after the application of any retainers, which application as accrued is hereby approved (subject to disgorgement as provided below), in the aggregate amount not to exceed $500,000 (provided that all such fees and expenses are payable under sections 330 and 331 of the Bankruptcy Code and pursuant to an order of the Court, and any fees and expenses satisfied by application of retainers shall nevertheless be subject to approval by the Court and if not approved the amount of the retainers applied thereto shall be subject to disgorgement); *plus* (iv) unpaid fees and expenses of the Debtor's claims and noticing agent not to exceed $10,000; *plus* (v) unpaid fees and expenses of committee members and of any retained professionals of any statutory committee appointed in this case (a "Statutory Committee") that are incurred prior to the Carve-Out Trigger Date and invoiced and payable under sections 330 and 331 of the Bankruptcy Code (but only to the extent that such fees and

expenses and committee member expenses are payable pursuant to an order of the Court) but not exceeding the amounts therefore contained in the Budget; *provided* that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in this paragraph. As used herein, "Carve-Out Trigger Date" shall mean the date on which the Lender provides written notice to the Debtor and counsel to the Debtor, with a copy of such notice to counsel for any Statutory Committee (if appointed), that the Carve-Out is invoked, which notice shall be delivered only on or after and during the continuation of an Event of Default.

7. Subject to entry of the Final Order, other than the Carve-Out, the Debtor, for itself and its estate, shall not assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender upon, the DIP Collateral. This provision shall not apply if this case converts from chapter 11 to chapter 7 during the applicable Challenge Period.

8. As long as any portion of the DIP Obligations remains unpaid, or the Credit Agreement remains in effect, the Debtor shall not seek, and it shall constitute an Event of Default if (among other Events of Default contained in the Credit Agreement) the Debtor seeks, or if there is entered, an order dismissing or converting this chapter 11 case to a case under another chapter of the Bankruptcy Code. If an order dismissing or converting the chapter 11 case under section 1112 of the Bankruptcy Code or otherwise is at any time entered (or any other Event of Default occurs), (a) the Superiority Claims and DIP Liens granted pursuant to this Interim Order to the Lender shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such dismissal and (b) this Court shall, to the extent

permitted by applicable law, retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such Superpriority Claims and DIP Liens.

9. Upon the occurrence and during the continuance of an Event of Default, and subject to the notice provisions described below, the Lender may exercise rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to section 362 of the Bankruptcy Code (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) in order to: (a) terminate the DIP Loan and thereafter cease to make DIP Loans to the Debtor; (b) declare the principal of and accrued interest and other liabilities constituting the DIP Obligations to be due and payable; (c) enforce rights against any DIP Collateral in the possession of the Lender; and/or (d) take any other action or exercise any other right or remedy permitted to the Lender under the Credit Agreement, this Interim Order or by operation of law; provided, however, the Lender may take the actions described in clauses (c) or (d) above only after providing five (5) business days' prior written notice to the Court, the Debtor, and any Statutory Committee appointed in the chapter 11 case. The Debtor waives any right to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the Lender set forth in this Interim Order and in the Credit Agreement, provided that such waiver shall not preclude the Debtor from contesting and seeking affirmative relief as to whether an Event of Default has occurred and is then continuing.

10. The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements, as the Lender may reasonably require, as evidence of and for the protection of the DIP Obligations, or which otherwise may

be deemed reasonably necessary by the Lender to effectuate the terms and conditions of this Interim Order and the Credit Agreement. Without objection by any Statutory Committee, the U.S. Trustee, or the United States of America, acting through the Rural Utility Service (the "RUS"), within three (3) Business Days following notice by the Debtor, or with approval of this Court in the event of a timely objection by any Statutory Committee, the U.S. Trustee, or the RUS, the Debtor and the Lender shall be authorized to implement, in accordance with the terms of the Credit Agreement, any modifications of the Credit Agreement which are not material and adverse to the Debtor, the interests of any Statutory Committee or the RUS. Any modifications of the Credit Agreement which are material and adverse to the Debtor, the interests of any Statutory Committee or the RUS shall be subject to prior approval by this Court upon motion by the Debtor.

11. Having been found to be extending credit and making DIP Loans to the Debtor in good faith, the Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the DIP Obligations, the Superpriority Claims, and the DIP Liens created or authorized by this Interim Order in the event that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Interim Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to, or the grant of any protection afforded to the Lender under, this Interim Order.

12. Subject to entry of the Final Order, and subject to any timely and successful Challenge (defined below), as of the Closing Date, the Borrower and any Person seeking to exercise the rights of the Borrower's estate, including, without limitation, any successor to the Borrower or any estate representative appointed or selected pursuant to the Bankruptcy Code,

forever releases and waives all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than for fraud, willful misconduct, or gross negligence) in connection with or related to the Borrower, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place during the six (6)-month period preceding the Petition Date, that may be asserted against (i) the Lender, (ii) the Lender's Affiliates, (iii) any of the Lender's or the Lender's Affiliates' respective former, current or future direct or indirect equity holders, controlling persons, stockholders, directors, officers, employees, agents, counsel, advisors, Affiliates, members, managers, general or limited partners or assignees, but only in their capacities as such or (iv) any of the foregoing parties' respective former, current or future direct or indirect equity holders, controlling persons, stockholders, directors, officers, employees, agents, counsel, advisors, Affiliates, members, managers, general or limited partners or assignees, but only in their capacities as such (the "Release"). The Release shall be binding upon the Debtor in all circumstances and upon all other parties in interest in this case, including, without limitation, any Statutory Committee, unless and to the extent, after an investigation by the Debtor as to the claims covered by the Release (a) the Debtor has timely filed an adversary proceeding or contested matter asserting a claim against the Lender (each, a "Challenge") by the later of (i) sixty (60) days after the initial selection of counsel by any Statutory Committee appointed in this case, or (ii) if no Statutory Committee is appointed, seventy-five (75) days after the Petition Date (the "Challenge Period"), and (b) there is a final order in favor of the Debtor sustaining any such Challenge in any such

timely filed adversary proceeding or contested matter. If an Event of Default shall occur during the applicable Challenge Period, but before the completion of an investigation by the Debtor, the investigation shall end and there shall be no Release unless (x) the Lender agrees to continue funding the DIP Loan, and (y) there is not a timely and successful Challenge. Additionally, if the case converts to chapter 7 or a trustee is appointed in chapter 11 during the Challenge Period, the trustee shall have a challenge period of sixty days from the date of his appointment or as otherwise ordered by the Court upon a motion brought by the trustee to initiate a Challenge.

13. Without limiting any other rights which any such Person may have hereunder, under the Credit Agreement, or under applicable law, the Debtor shall indemnify the Lender and its officers, directors, shareholders, members, managers, controlling persons and employees (each of the foregoing Persons being individually called an "Indemnified Party"), forthwith on demand, from and against any and all damages, losses, claims, liabilities and related costs and expenses, including reasonable attorneys' fees and disbursements (all of the foregoing being collectively called "Indemnified Amounts") awarded against or incurred by any of them arising out of or relating to the failure of the Debtor, its agents or representatives to perform its respective obligations under the Credit Agreement or arising out of claims asserted against an Indemnified Party relating to the transactions contemplated under the Credit Agreement or the use of proceeds therefrom, including, without limitation, in respect of the funding of any DIP Loan, excluding, however, Indemnified Amounts to the extent determined by a court of competent jurisdiction to have resulted from gross negligence or willful misconduct on the part of such Indemnified Party. The Lender, for itself and on behalf of each Indemnified Party has agreed that (a) the indemnification provided by the Debtor is of the Debtor only and not an

obligation of any Affiliate, officer, director, successor, assign, agent or representative and (b) the indemnification provided does not include costs and expenses (including attorney's fees and disbursements) incurred by any of the Indemnified Parties in connection with seeking, and defending against objections to, entry of this Interim Order or the Final Order.

14. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in this chapter 11 case (and the DIP Obligations shall not be discharged by the entry of any such order or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor having hereby waived such discharge); (b) converting the chapter 11 case to a chapter 7 case; or (c) dismissing the chapter 11 case; and the terms and provisions of this Interim Order as well as the Superpriority Claims and DIP Liens granted pursuant to this Interim Order and the Credit Agreement shall continue in full force and effect notwithstanding the entry of any such order, and such Superpriority Claims and DIP Liens shall maintain their priority as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full and discharged.

15. Notwithstanding anything in this Interim Order to the contrary, the Lender's obligation to make DIP Loans in accordance with the Credit Agreement shall automatically terminate without any further action by this Court or the Lender, upon the earliest to occur of the following: (a) the 363 Sale Closing Date; (b) the effective date of a plan of reorganization in this case; (c) the date on which the Commitment is terminated as provided in Section 9.2 of the Credit Agreement (which section governs the effects of Events of Default); and (d) the Maturity Date (October 12, 2012).

16. Nothing in this Interim Order shall prejudice (a) (i) the right of the Lender to elect, in its sole discretion pursuant to the Credit Agreement, to convert the DIP Loans or any

portion thereof into a capital contribution in exchange for capital stock of the Debtor or (ii) the effectiveness of any election; (b) the right of any party in interest to object to any provision of the Credit Agreement proposed to apply only under the Final Order, including in particular, the provisions relating to the priming of prepetition liens pursuant to section 364(d) of the Bankruptcy Code; or (c) the setoff and recoupment rights of the United States of America.

17. The Lender shall have no obligation to continue to provide postpetition funding to the Debtor pursuant to the Credit Agreement in the event that (among other Events of Default) (a) the final order of this Court under Bankruptcy Rule 4001(c)(2) for the purpose of approving the Credit Agreement is not in form and substance satisfactory to the Lender for any reason, including, without limitation, that it does not provide for the grant of first priority priming liens pursuant to Section 11.4(ii) of the Credit Agreement or the grant of the Release pursuant to Section 10.1 of the Credit Agreement, (b) the Final Order is not entered within thirty (30) days after the Petition Date, or (c) the Release is subject to a Challenge by the Debtor.

18. The Final Hearing to consider entry of the Final Order is scheduled for October 31, 2011 at 1:30 p.m. (Eastern Time) before this Court. If no objections to the relief proposed to be sought at the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

19. On or before October 13, 2011, the Debtor shall serve by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing, to

any other party that has filed a request for notices with this Court, to any Statutory Committee, if the same shall have been appointed, or counsel to any such committee, and to all secured creditors, including taxing authorities who may hold secured claims. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of this Court no later than October 24, 2011, which objections shall be served upon (a) counsel to the Debtor, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Norman L. Pernick and Marion M. Quirk, npernick@coleschotz.com and mquirk@coleschotz.com; (b) counsel to the Lender, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: D. J. Baker, dj.baker@lw.com; (c) counsel to any Statutory Committee; and (d) the Office of the United States Trustee for the District of Delaware, in each case to allow actual receipt of the foregoing no later than October 24, 2011 at 4:00 p.m. (Eastern Time).

20. Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3) 6004(h), 7062 or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

21. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

22. The terms of this Interim Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: October 11, 2011
Wilmington, Delaware

The Honorable Kevin J. Carey
United States Bankruptcy Judge



NY\1870522.8