# **EXHIBIT B**

Term Sheet

# "STALKING HORSE" TERM SHEET

| | |
|---|---|
| **Buyer:** | totheHome.com, LLC ("Buyer"). |
| **Seller:** | Open Range Communications Inc. ("Seller") |
| **Transaction:** | Subject to the terms set forth herein, Buyer and Seller propose to enter into an asset purchase agreement (the "Agreement") containing substantially the terms set forth herein and otherwise containing terms as shall be mutually agreed by the parties. The Agreement and the transactions contemplated thereby (the "Transaction") shall serve as the "Stalking Horse Bid" in the bankruptcy case of the Seller, Case No. 11-13188 (KJC) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). |
| **Acquired Permanent Assets:** | All or substantially all of the assets of Seller now owned or hereafter acquired used in or necessary for the conduct of Seller's business of providing high speed wireless internet and digital phone services to hundreds of un-served and underserved communities across the United States (the "Business"), including, without limitation, (a) all equipment listed in the data room established by the Seller, including all computer hardware, software and networking equipment, all service vehicles, field tools and RF testing tools, and cabling, (b) the Seller's entire customer base, (c) the Seller's name (Open Range Communication Inc.) and branding assets and (d) all intellectual property, including patents, trademarks, and trade secrets (collectively, the "Acquired Permanent Assets"). These assets do not include assets set-out under Transition Period Assets or Excluded Surplus Assets. |
| **Transition Period Assets:** | All assets identified as being required for a transition period of up to nine months post Transaction Close. These assets will be retrieved and returned by the Buyer to a location of the Seller's choice within nine months of Transaction Close if the Buyer does not chose to purchase the assets under the First Right of Refusal. This will specifically include all WiMAX equipment that is currently deployed on over 400 towers around the network, current customer premise equipment and any other equipment specifically identified as required for only the transition period. Best attempts will be made to return this equipment in a timely fashion which preserves asset value. |
| **Excluded Surplus Assets:** | All assets of Seller other than the Acquired Assets and Transition Period Assets ("Excluded Surplus Assets"). These assets will be retained by the Seller. This includes all warehoused WiMax |

| | |
|---|---|
| | transmission and CPE equipment, radio equipment spares not currently deployed, excess personal computer equipment, and other surplus assets not required by the Buyer to continue operations. Excluded surplus assets includes any and all avoidance actions of the debtor, and any and all claims against third parties, including without limitation, Alvarion. |
| **First Right of Refusal:** | The Buyer will have the First Right of Refusal to purchase Transition Period Assets in the nine months subsequent to Transaction Close at a price of 10% of the historical undepreciated cost basis for these assets. |
| **Assumed Liabilities:** | Certain specified liabilities of Seller as may be specifically designated by Buyer ("Assumed Liabilities"). Buyer shall assume no liabilities or obligations of Seller, whether known or unknown, fixed or contingent, other than the specified Assumed Liabilities. |
| **Purchase Price:** | $2,000,000 in cash (the "Purchase Price") |
| **Operations Funding:** | From November 8, 2011 until execution of the Agreements contemplated in this term sheet, Buyer will pay to Seller $350,000 maximum per week (pro rated daily for partial weeks) for the continued operation of the Buyer's customer serving operations. This charge will not exceed $350,000 per week (averaged over the weeks between November 8, 2011 and closing, prorated for days elapsed) and amounts will be trued up to actual incremental charges incurred by the Seller for continued customer serving operations ("Operations Funding"). A $350,000 deposit is to be paid by the Buyer to the Seller within one day of Bankruptcy Court approval of the Bidding Procedures and Expense Reimbursement (the "Bidding Procedures Order"). This deposit will offset actual amounts incurred by the Buyer for Operations Funding. Amounts in excess of the $350,000 deposit will be due upon execution of the Asset Purchase Agreement (estimated as of that date and trued up within 14 days thereafter). In the event that Seller accepts a bid, other than that of Buyer, as the highest and best offer for the acquired permanent assets and consummates such transaction (an "Alternative Transaction"), all Operations Funding will be refunded to the Buyer. |

| Seller Assistance with Transition Planning: | From the date of the Bidding Procedures Order, the Seller will assist the Buyer with planning for the transition upon the closing of a sale to the Buyer (the "Closing"). This will include reasonable efforts (without requiring out of pocket expenditures by the Seller) to provide acceptable notifications (to the Buyer) to customers of the intent to continue services and thereby aid in preserving the customer base. This will also include assistance planning for the assignment, rejection or renegotiation of commercial agreements between the Seller and vendors, to enable the Buyer to address vendor contracts as soon as practical upon the Closing, and other reasonable business planning and continuation efforts to assist with a efficient transition of the assets and operations. |
|---|---|
| Sale Approval Timing and Related Conditions: | (i) Within two (2) days following the execution of this Term Sheet, Seller shall file in the Bankruptcy Case a motion (the "Sale Motion") seeking approval of the Transaction, in form and substance reasonably satisfactory to Buyer, for approval by the Bankruptcy Court. The Sale Motion shall include a request for entry of the Bidding Procedures Order; <br><br> (ii) The parties shall execute the Agreement and all related agreements and documents (collectively, the "Transaction Documents") within five (5) days of the date of the filing of the Sale Motion; <br><br> (iii) the Bidding Procedures Order shall be entered by the Bankruptcy Court in form and substance reasonably satisfactory to Buyer, within eight (8) days following the execution of this Term Sheet; <br><br> (iv) Consummation of the Transaction is subject to the determination by Seller that is the highest or otherwise best offer for the Acquired Assets and Assumed Liabilities. In connection with this determination, Seller will conduct an auction (the "Auction") of its assets in accordance with section 363 of the Bankruptcy Code and the Bidding Procedures by no later than November 14, 2011; and <br><br> (v) By no later than November 17, 2011, Seller shall have obtained an entry of an order of the Bankruptcy Court (the "Sale Order") (x) approving the Transaction including the sale of the Acquired Permanent Assets to Buyer free and clear of all liens, claims and interests pursuant to section 363(b) and 363(f) of the Bankruptcy Code and (y) containing, among other things, findings of fact and rulings that Buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy |

3

| | Code. |
|---|---|
| **Bidding Procedures:** | Seller shall obtain an order (the "Bidding Procedures Order") from the Bankruptcy Court in the form and substance reasonably satisfactory to Buyer approving the Expense Reimbursement provision set forth below, as well as the bidding procedures to be mutually agreed by the parties (the "Bidding Procedures"). |
| **Break-Up Fee and Expense Reimbursement:** | In consideration of Buyer's entering into the Agreement and in recognition of Buyer's work in (i) establishing a bid standard or minimum for other bidders and (ii) for serving, by its name and expressed interest, as a catalyst for other bidders, as an reimbursement for Buyer's expenses incurred in connection with the Transaction, Seller shall pay to Buyer (A) a break-up fee in the amount of 4% of the Purchase Price (the "Break-Up Fee") and (B) an amount (in no event to exceed $170,000) equal to Buyer's actual reasonable and documented expenses incurred in connection with the Agreement and the transactions contemplated thereby (the "Expense Reimbursement"), if: (x) Seller accepts a bid, for the Acquired Permanent Assets, other than that of Buyer, as the highest and best offer and consummates such transaction (an "Alternative Transaction"), or (y) Buyer terminates the Agreement in the event of Seller's failure to perform in any material respect any obligation required to be performed by it under the Agreement.<br><br>The Break-Up Fee and Expense Reimbursement shall be paid as an administrative priority of Seller under section 503(b)(1) of the Bankruptcy Code upon the earlier to occur of the consummation of any Alternative Transaction, or the conversion of the Bankruptcy Case to a case under chapter 7 of the U.S. Bankruptcy Code or within two business days of Buyer's termination of the Agreement as described in clause (y) of the immediately preceding sentence. |
| **Due Diligence:** | Buyer shall be permitted to conduct a due diligence investigation of the prospects, business, assets, contracts, rights, liabilities and obligations of Seller, including, without limitation, financial, marketing, employee, legal, regulatory and environmental matters through the date Qualified Bids are due to be submitted to Seller. To that end, Seller shall provide to Buyer and its representatives complete access to Seller's facilities, books and records and shall cause its representatives to cooperate fully with Buyer and Buyer's representatives in connection with Buyer's due diligence. |
| **Transfer Taxes:** | All transfer taxes payable as a result of the Transaction shall be |

49524/0001-8010542v5

| | |
|---|---|
| | paid by Buyer. |
| **Employees:** | Buyer may offer employment to any employee of Seller who is specifically identified by Buyer pursuant to the terms of the Agreement. Seller shall give Buyer reasonable access to all employees and, subject to applicable law, employment records for purposes of enabling Buyer to determine its staffing needs following the closing. In the event that the Buyer elects to hire an employee, Buyer shall assume employee liabilities for severance at Seller's current policy level (two weeks) and shall assume any liability for unused vacation. |
| **Expenses:** | Except as provided above, each party will bear its own expenses in connection with the Transaction. |
| **Definitive Agreement:** | Consummation of the Transaction shall be subject to the negotiation, execution and delivery of the definitive Transaction Documents in form and substance mutually satisfactory to the parties and which reflect the provisions set forth on this term sheet. The parties agree to negotiate in good faith the terms of the Transaction Documents and use commercially reasonable efforts to enter into such Transaction Documents as promptly as practicable. |
| **Termination:** | The Agreement may be terminated and the Transaction abandoned by:<br><br>(i) mutual consent of the parties;<br><br>(ii) Seller, if Seller accepts an Alternative Transaction (as defined above) in accordance with the terms of the Agreement;<br><br>(iii) either party, if a governmental authority issues a final ruling or order prohibiting the Transaction;<br><br>(iv) Seller, if there is an Event of Default under the DIP Financing; and<br><br>(v) such other conditions as may be agreed by the parties. |
| **Governing Law:** | This Term Sheet shall be governed and construed under the laws of the State of Delaware, and each of the parties submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of all legal proceedings arising out of or relating to this Term Sheet. |

49524/0001-8010542v5

OPEN RANGE COMMUNICATIONS, INC.

By: _____
    CHRIS LEVANO
Title: Assistant CEO


TOTHEHOME.COM, LLC

By: _____
Shawn Sprengeler

Title: President/CEO


OPEN RANGE COMMUNICATIONS, INC.