# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OPEN RANGE COMMUNICATIONS INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 11-13188 (KJC)<br><br>**Objection Deadline: February 7, 2013, 2013 @ 4:00 p.m.**<br>**Hearing Date: TBD** |

## FIRST INTERIM FEE APPLICATION OF POLSINELLI SHUGHART FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS SPECIAL LITIGATION COUNSEL TO THE TRUSTEE FOR THE INTERIM PERIOD FROM MARCH 15, 2012 THROUGH DECEMBER 31, 2012

| | |
|---|---|
| Name of Applicant: | Polsinelli Shughart |
| Authorized to Provide Professional Services to: | Charles M. Forman, in his capacity as Chapter 7 Trustee for the above-captioned debtor |
| Date of Retention: | *nunc pro tunc* to March 15, 2012 |
| Period for which compensation and reimbursement is sought: | March 15, 2012 to December 31, 2012 |
| Interim Amount of Compensation sought as actual, reasonable, and necessary: | $1,095,283.27, which is an agreed upon reduction between Polsinelli and Chapter 7 Trustee |
| Interim Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $47,206.88 |
| This is a(n): | ___Monthly   ✓ Interim   ___ Final application |

This is the **first** interim fee application filed in this case.

| Compensation Period | 100% Fees | 100% Expenses | Total |
|---|---|---|---|
| March 15, 2012 – December 31, 2012 | $1,095,283.27 | $47,206.88 | $1,142,490.15 |

2305646.2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| OPEN RANGE COMMUNICATIONS INC., ) | Case No. 11-13188 (KJC) |
| ) | |
| Debtor. ) | **Objection Deadline: February 7, 2013, 2013 @ 4:00 p.m.** |
| ) | **Hearing Date: TBD** |
| ) | |

### FIRST INTERIM FEE APPLICATION OF POLSINELLI SHUGHART FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS SPECIAL LITIGATION COUNSEL TO THE TRUSTEE FOR THE INTERIM PERIOD FROM MARCH 15, 2012 THROUGH DECEMBER 31, 2012

Polsinelli Shughart ("**Polsinelli**"), special litigation counsel to Charles M. Forman, in his capacity as Chapter 7 Trustee (the "**Trustee**"), in the above-captioned case (the "**Case**") of Open Range Communications Inc. (the "**Debtor**"), submits its first interim fee application (the "**Application**") for entry of an order pursuant to 11 U.S.C. §§ 330 and 331 granting it compensation and reimbursement of expenses for the interim period from March 15, 2012 through December 31, 2012. In support this Application, Polsinelli respectfully represents as follows:

### I. JURISDICTION, VENUE, AND STATUTORY PREDICATES FOR RELIEF SOUGHT

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought this Application are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "**Bankruptcy Code**").

## II. **BACKGROUND**

2. On October 6, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continued in the management and operation of its businesses and properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until February 24, 2012.

3. On October 19, 2011, the United States Trustee for the District of Delaware appointed the committee of general unsecured creditors (the "**Committee**") in the Case pursuant to section 1102 of the Bankruptcy Code.

4. Subsequently, on November 3, 2011, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Fed. R. Bankr. P. 2002, 4001, 9014 and 9019 Authorizing the Debtor to Obtain Postpetition Secured Financing* [D.I. 203] (the "**Final DIP Order**"), authorizing the Debtor to obtain approximately $6 million in DIP financing from OEP Open Range Holdings, LLC (the "**Lender**").

5. Additionally, the Final DIP Order authorized the official committee of unsecured creditors (the "**Committee**") and the Debtor to investigate (the "**Investigation**") whether any viable claims (a "**Challenge**") existed against the Lender, the Rural Utilities Service of the United States' Department of Agriculture (the "**RUS**"), the Federal Communications Commissions (the "**FCC**"), and/or a Federal Affiliate (together with the RUS and FCC, the "**United States**").

6. On November 15, 2011, the Court entered an Order (the "**Committee Retention Order**") approving the retention of Polsinelli as counsel to the Committee, *nunc pro tunc* to October 19, 2011 [Docket No. 281].

7. Pursuant to the Final DIP Order, the Debtor and the Committee, through Polsinelli, conducted discovery in furtherance of their Investigation of the Lender and the United States.

8. On February 24, 2012, the Court entered the *Order Converting the Debtor's Chapter 11 Bankruptcy Case to a Case Under Chapter 7 of the Bankruptcy Code Effective as of February 24, 2012 at 5:00 p.m.* [Docket No. 654], converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

9. On April 27, 2012, the Trustee sought to retain Polsinelli as special litigation counsel *nunc pro tunc* to March 15, 2012 (the "**Polsinelli Retention Application**"). *See* D.I. 722. The Trustee determined to retain Polsinelli on a contingency basis because of its prior representation of the Committee, which included the Investigation into both the United States and the Lender. Accordingly, on May 18, 2012, the Court entered an order[1] approving the Trustee's retention and employment of Polsinelli as special litigation counsel on a contingency basis (the "**Retention Order**").

### III. FEES AND EXPENSES

10. Polsinelli has continuously rendered services on behalf of the Trustee for the period from March 15, 2012 through December 31, 2012 (the "**Interim Compensation Period**"). Although Polsinelli is compensated strictly on a contingency fee basis in this Application, it has expended no less than 2,391.17 hours of professional time during the Interim Compensation Period.

11. As detailed in the *Declaration of Christopher A. Ward, Esq. in Support of Application of the Chapter 7 Trustee Pursuant to 11 U.S.C. § 327(e) for Authority to Employ and*

---

[1] Exhibit A; *Order Approving Application of Charles M. Forman, the chapter 7 Trustee, Pursuant to 11 U.S.C. §§327(e), for Authority to Employ and Retain Polsinelli Shughart PC as Special Litigation Counsel, nunc pro tunc to March 15, 2012* [D.I. 742].

2305646.2

*Retain Polsinelli Shughart as Special Litigation Counsel Nunc Pro Tunc to March 15, 2012* [D.I. 722, Ex. 2], the Trustee has agreed to compensate Polsinelli by, *inter alia*, awarding it (i) 40% of all gross proceeds from litigation against, or settlement with, the RUS, the FCC, and Alvarion, Inc. ("**Alvarion**") plus actual and reasonable out-of-pocket expenses, (ii) 30% of all gross collections for any claims based on the Escrow Agreement, (iii) 40% of all gross proceeds from litigation against, or settlements with, OEP plus actual and reasonable out-of-pocket expenses, (iv) 30% of all gross collections obtained from proceeds of prosecuting the preference actions plus actual and reasonable out-of-pocket expenses. *See id.* ¶ 12.

12. After the Trustee obtained the authority to retain Polsinelli for the matters listed in the Polsinelli Retention Application, Polsinelli began immediately prosecuting the claims of the Trustee under the Escrow Agreement and against the RUS, the FCC, OEP, and Alvarion.

**Escrow Litigation**

13. Upon obtaining relief from the automatic stay and the consent of the Trustee and his professionals, on April 12, 2012, Velocitel, Inc. ("**Velocitel**") filed a complaint [D.I. 709; Adv. Pro. No. 12-50476, D.I. 1] (as may be amended from time-to-time (detailed below), the "**Velocitel Complaint**") against the Trustee and the RUS, seeking (i) a declaration on the rights and interests of parties to certain funds (the "**Funds**") held in an escrow account (the "**Escrow**")[2] and (ii) turnover of the Funds to the proper parties. *See* Velocitel Compl., Counts I & II. In the original Velocitel Complaint, Velocitel asserted a claim to $2.77 million of the Funds in the Escrow, plus other amounts. *See, e.g., id.* ¶¶ 18, 31.

---

[2] On October 11, 2011, the Court entered an order authorizing the Debtor to use its cash management system but required the Debtor to place roughly $4.9 million from a separate account in an escrow account pending further order of the Court. *See Order (I) Authorizing the Continued Use of Existing Cash Management System, (II) Authorizing the Continued Use of Existing Bank Accounts and Business Forms, and (III) Waiving the Requirements of 11 U.S.C. Section 345(B) on an Interim Basis* [D.I. 45]. During the Debtor's chapter 11 case, the Debtor was made aware of alleged claims of several parties to the funds in this account.

2305646.2

14. Polsinelli investigated the factual and legal allegations contained in the Velocitel complaint and, on May 14, 2012, Polsinelli filed the Trustee's answer to the Velocitel Complaint, asserted counterclaims and cross claims against Velocitel and the RUS, and filed a third-party complaint against John Does 1-25. *See* Adv. Pro. No. 12-50476, D.I. 6. Because of continued factual investigation, Polsinelli subsequently filed the Trustee's amended third-party complaint on June 20, 2012, to add G4S Technology, LLC ("**G4S**") and Alvarion as third-party defendants. *See* Adv. Pro. No. 12-50476, D.I. 8.[3]

15. Moreover, to ensure that the universe of claimants to the Escrow Funds was defined and resolved in the Escrow Litigation, Polsinelli researched, drafted, filed, and prosecuted the Trustee's motion[4] requesting the Court establish a deadline for parties to file an answer to the Trustee's third-party complaint or be forever barred from seeking a recovery from the Funds held in the Escrow (the "**Third-Party Answer Motion**"). The Court subsequently granted the Third-Party Answer Motion.[5] No other parties besides those named defendants in the Trustee's third-party complaint filed a responsive answer to the Trustee's third-party complaint. Therefore, the dispute over the Escrow Funds was limited to Velocitel, the Trustee, the United States, Alvarion, and G4S.

16. On July 10, 2012, G4S filed an answer to the Trustee's third-party complaint and asserted counterclaims/cross claims against Velocitel, the Trustee, the RUS, and Alvarion. *See* Adv. Proc. No. 12-50476, D.I. 11. G4S averred that it has a claim against the Debtor's estate for

---

[3] The Trustee also asserted the third-party complaint against Block-Dot Wireless, LLC ("**Black-Dot**"). *See* Adv. Pro. No. 12-50476, D.I. 8. However, Black-Dot informed the Trustee that it did not seek a recovery from Funds in the Escrow and did not want to participate in the adversary proceeding. Therefore, the Trustee voluntarily dismissed the third-party complaint against Black-Dot. *See* Adv. Pro. No. 12-50476, D.I. 12. Black-Dot did not otherwise meet the requirements to assert an interest in the Pledged Deposit Account.

[4] *Motion of Charles M. Forman, as Chapter 7 Trustee, for Entry of an Order Establishing a Deadline for Parties-In-Interest to File an Answer to the Third-Party Complaint* [Adv. Proc. No. 12-50476, D.I. 9].

[5] *See Order (I) Establishing a Deadline for Parties-in-Interest to Answer the Third-Party Complaint and (II) Approving the Form and Manner of Notice of the Third-Party Answer Date* [Adv. Proc. No. 12-50476, D.I. 15.].

2305646.2

approximately $10 million, which included amounts held in the Escrow earmarked for G4S. *Id.* ¶¶ 24-27. G4S requested an accounting to determine the amount of Escrow Funds owed to it. *Id.* ¶ 42.

17. On July 11, 2012, Velocitel filed its answer to the Trustee's counterclaim. *See* Adv. Proc. No. 12-50476, D.I. 15.

18. On July 24, 2012, the United States filed a motion to dismiss Velocitel's complaint against the RUS and G4S's cross claim against the RUS. *See* Adv. Proc. No. 12-50476, D.I. 18.

19. On July 25, 2012, the United States answered the Trustee's cross claim. *See* Adv. Proc. No. 12-50476, D.I 20.

20. On July 27, 2012, Alvarion filed its answer to the Trustee's third-party complaint and asserted counterclaims/cross claims against Velocitel, the Trustee, the RUS, and G4S. *See* Adv. Proc. No. 12-50476, D.I. 15 & 16. Alvarion claimed it is owed approximately $11 million from the Debtor's estate and requests an accounting to determine what amounts of the Escrow Funds are payable to Alvarion. *Id.* ¶¶ 18, 34.

21. On August 1, 2012, the United States filed a motion to dismiss Alvarion's cross claim against the RUS. *See* Adv. Proc. No. 12-50476, D.I. 24.

22. On August 7, 2012, Velocitel filed an amended complaint to amend the relief demanded. *See* Adv. Proc. No. 12-50476, D.I. 26.

23. On August 14, 2012, Velocitel filed its answer to G4S's counter claim. *See* Adv. Proc. No. 12-50476, D.I. 29.

24. On August 17, 2012, Velocitel filed its answer to Alvarion's counter claim. *See* Adv. Proc. No. 12-50476, D.I. 32.

25. After substantial review of all the pleadings detailed above and research into their factual and legal allegations, Polsinelli drafted and filed the Trustee's answer to Alvarion's cross claim on August 17, 2012. *See* Adv. Proc. No. 12-50476, D.I. 31. And on August 21, 2012, Polsinelli filed the Trustee's (i) answer to the amended Velocitel Complaint, *see* Adv. Proc. No. 12-50476, D.I. 35, and (ii) answer to G4S cross claim. *See* Adv. Proc. No. 12-50476, D.I. 36.

26. On August 31, 2012, the United States filed its *Motion to Consolidated Adversary Proceedings* [D.I. 42] (the "**Motion to Consolidate**"), requesting that the Court consolidate the Escrow Litigation (Adv. Proc. No. 12-50476) and the RUS Litigation (Adv. Proc. No. 12-50795) (detailed below).

27. On August 31, 2012, the United States filed a motion to dismiss the amended Velocitel Complaint. *See* Adv. Proc. No. 12-50476, D.I. 46.

28. Polsinelli began to draft substantive responses to the Motion to Consolidated and the United States motion to dismiss; however, such response deadlines were continued to allow settlement discussions to progress and no such responses were ever filed with the Court.

29. On October 11, 2012, G4S filed its brief in opposition to the United States' motion to dismiss. *See* Adv. Proc. No. 12-50476, D.I. 52.

30. Finally, on November 16, 2012, the United States filed its reply to G4S's brief in opposition to the United States' motion to dismiss. *See* Adv. Proc. No. 12-50476, D.I. 55.

**RUS Litigation**

31. As previously stated, during the Debtor's Chapter 11 case, Polsinelli researched the factual and legal basses to support any claims the Debtor may have against the RUS and/or the FCC. As a result of that investigation, Polsinelli, on behalf of the Committee, filed a motion to obtain standing to assert claims on behalf of the Debtor against the RUS and FCC in January

2012.[6] Yet because of the conversion of the Debtor's case, the Committee, then the Trustee, and the United States agreed to extend the Challenge period from time-to-time, delaying the filing of a complaint.

32. In May 2012, Polsinelli and the Trustee and his firm met with the United States to discuss the strengths and weaknesses of potential claims the estate had against the United States. In conjunction with this May 2012 meeting, Polsinelli also met with counsel for Alvarion to discuss the factual background and substance of the potential claims against Alvarion. Subsequently, in June and July 2012, Polsinelli and the Untied States exchanged substantial position statement letters, detailing the claims and defenses each party believed they held.

33. On July 25, 2012, the Trustee and his professionals again met with the United States in Washington, D.C. to discuss whether a possible settlement structure existed. The parties discussed a possible settlement of potential litigation but the discussions were fruitless at that point in time.

34. Therefore, on July 31, 2012,[7] the Trustee filed a complaint (the "**RUS Complaint**") against the United States, acting through the RUS and the FCC, and the FCC separately, asserting claims for breach of contract, breach of good faith and fair dealing, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, promissory/equitable estoppel, tortious interference, equitable subordination, claim objections, and avoidable preferences. *See* Adv. Proc. No. 12-50795, D.I. 1.

---

[6] On January 3, 2012, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Prosecute Causes of Action against the Untied States of America on Behalf of the Debtor's Estate* [D.I. 448].

[7] The time in which the Trustee could assert a Challenge against the Government terminated on July 31, 2012.

2305646.2

35. On August 31, 2012, the United States filed its *Motion to Dismiss Certain Claims Against United States For Lack Of Subject Matter Jurisdiction And For Failure To State A Claim* [Adv. Proc. No. 12-50795, D.I. 12].

36. On September 20, 2012, Polsinelli and the Trustee, counsels for Alvarion, Velocitel, and G4S, and the Department of Justice (the "**DOJ**") met in Washington, D.C. to discuss a global compromise of the Escrow Litigation and the RUS Litigation. Leading up to the September 20 meeting, Polsinelli prepared settlement assumptions to be adhered to at the meeting and numerous settlement alternatives for review by the Trustee. As a direct result of these actions by Polsinelli, this meeting resulted in a structure for a global settlement of the Escrow and RUS Litigations.

37. Subsequently, on September 26, 2012, Polsinelli sent a detailed letter to the DOJ outlining the structure of the settlement and detailing the strengths and weaknesses of each party's claims. Thereafter, the parties spent a considerable amount of time negotiating on the terms of the settlement and agreed to the terms of a settlement agreement.

38. The initial terms of the settlement did not include G4S. Therefore, Polsinelli had to simultaneously prepare for a contested settlement hearing and conduct ample legal research to press forward with approval of the settlement.

39. During this time, the United States and G4S, with the assistance of Polsinelli and the Trustee, were able to construct a structure whereby the Trustee's litigation with G4S would be resolved and G4S would become party to the settlement agreement.

40. Accordingly, on November 21, 2012, Polsinelli filed a motion on behalf of the Trustee seeking approval of this settlement agreement (the "**Settlement Motion**").

**OEP Litigation**

41. On May 22, 2012, Polsinelli filed, on behalf of the Trustee, his complaint against One Equity Partners III, L.P., OEP Open Range Holdings, LLC, and certain former directors of the Debtor ("**OEP**").  *See* D.I. 747; Adv. Proc. D.I. 1.  The Trustee filed an amended complaint (the "**Complaint**") on June 19, 2012.  *See* Adv. Proc. D.I. 5.  The Complaint alleged that OEP breached the Equity Commitment Letter and the 4/29/11 Side Agreement (both defined in the Complaint) by agreeing to fund the Debtor with up to $40 million in equity but only providing approximately $23.5 million.  *See* Compl. ¶¶ 39-56.  Additionally, the Complaint alleges OEP failed to properly implement or follow the Debtor's business plan, causing it to incur unnecessary expenses, exposing it to substantial liabilities, and failing to comply with their fiduciary duties as directors and majority shareholder.  *See id.* ¶¶ 57-75.  The Complaint asserted counts of breach of contract, breach of fiduciary duties, avoidable preferences, recharacterization, and equitable subordination.  *See* Compl., Counts I-XI.

42. On July 19, 2012, OEP filed their motion to dismiss and opening brief.  *See* Adv. Proc. D.I. 16 & 17.

43. On August 17, 2012, the Trustee filed his answering brief to the OEP's Motion to Dismiss.  *See* Adv. Proc. D.I. 32.

44. On September 14, 2012, OEP filed their reply brief to the Trustee's answering brief.  *See* Adv. Proc. D.I. 35.

45. On November 27, 2012, in response to the Settlement Motion, OEP sent a request for the production of documents to the Trustee and a notice to take his deposition.  *See* D.I. 798.  Polsinelli responded to the document requests with the Trustee's first production of documents on December 3, 2012.  *See* D.I. 804.  At the request of OEP, Polsinelli corrected certain alleged deficiencies in the initial production.  Polsinelli also defended OEP's deposition of the Trustee

on December 6, 2012. Polsinelli timely addressed any discovery requests made by OEP with respect to the Motion and Settlement Agreement.

46. On the evening of Friday, December 7, 2012, OEP filed its objection [D.I. 808] to the Settlement Motion, with a declaration of an alleged witness, William S. Beans, Jr. Over that weekend, Polsinelli drafted the Trustee's reply to OEP's objection and arranged for the deposition of OEP's witness. On December 10, 2012, Polsinelli filed the Trustee's reply to OEP's objection. *See* D.I. 814. And a day before the hearing on the Settlement Motion, Polsinelli participated in a deposition of OEP's witness.

47. On the day of the Settlement Motion hearing, December 12, 2012, Polsinelli began negotiations of a possible settlement with OEP to provide a global compromise of the major disputes concerning the Debtor's estate. These negotiations went through the weekend, and as a result of these negotiations, the Trustee and OEP came to an agreement resolving disputes between the two parties and Polsinelli filed a motion to approve this agreement on December 18, 2012.

**Global Compromise**

48. As noted above, on November 21 and December 18, 2012, Polsinelli filed motions to authorize the Trustee to enter into settlement agreements with the RUS, the FCC, Velocitel, G4S, Alvarion, and OEP, establishing a global resolution of litigation between the Trustee and these parties. *See* D.I. 793 & 823. As mentioned above, Polsinelli engaged in numerous rounds of factual discovery, including document productions and depositions, motion practice, and other procedures to assert the Trustee's claims and defend claims against the estate, which eventually led to a resolution these claims through settlement agreements. These agreements were the result of lengthy, arm's-length negotiations by Polsienlli for the benefit of

the Trustee and the estate. Accordingly, on December 21, 2012, the Court granted these motions and authorized the Trustee to enter into the settlement agreements. *See* D.I. 823, 833, & 835.

49. In addition, despite efforts taken during the Chapter 11 case, all of the Debtor's electronic records were in shambles after conversion of the case to chapter 7. Polsinelli has spent a considerable amount of time working to correct those books and records and make them accessible to the Trustee and his professionals. The re-creation of these records was vital to any litigation that would be undertaken by the Trustee. After hundreds of hours of work by Polsinelli, in conjunction with the Trustee and his professionals, Polsinelli has been able to re-create such records and is working to house certain of those records in Polsinelli's Denver office.

50. The settlement agreements resolve contentious litigation between the parties and allow the Trustee to make an eventual distribution to unsecured creditors in this case. Indeed, Polsinelli obtained waivers from OEP and the RUS of their secured claims asserted against the estate. Without Polsinelli's actions on behalf of the Trustee, the estate remain subject to the United States' $73.5 million secured claim and OEP's approximately $6 million DIP financing claim. Absent the settlements obtained with the assistance of Polsinelli, almost the entire estate would be encumbered by the United States' secured claim and any remaining assets would be encumbered by the secured claim of OEP. There was no hope for any likely recovery beyond these two secured claims. Thus, without Polsinelli's litigation efforts, undertaken at its own expense, the estate would have no unencumbered assets for distribution to unsecured creditors.

51. Further, Polsinelli obtained more than just a waiver of the two largest secured claims in the Case. As detailed on the chart attached as <u>Exhibit B</u>, Polsinelli obtained a positive recovery for the estate comprising: $757,407.00 in proceeds from the Escrow Litigation; $951,326.33 in proceeds from the RUS Litigation; $327,076.06 in modem receipts; $988,021.95

2305646.2

in proceeds from the OEP Litigation, and a percentage of future preference recoveries for the benefit of the estate. This positive recovery will allow the Trustee to potentially make distributions to all secured, administrative, and priority claimants, and hopefully an eventual distribution to unsecured creditors after a claims thorough reconciliation process. At the time of conversion to chapter 7, no one believed that the Trustee could make such a distribution because of the overriding secured claims and the lack of sufficient unencumbered assets. Accordingly, Polsinelli has obtained a substantial recovery for the benefit of the Debtor's estate and creditors.

**Preference Settlements**

52. After being retained by the Trustee, Polsinelli immediatley began its analysis of Open Range's payment practices for the 90-day and 1-year periods prior to the Petition Date. Accordingly, after substantial negotiation with certain of the Debtor's pre-petition creditors, Polsinelli has settled preference claims on behalf of the Debtor's estate, returning $189,000 dollars to the Debtor's estate. *See*, *e.g.*, *Motion of the Chapter 7 Trustee Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving and Authorizing the Satisfaction of Certain Claims* [D.I. 789].

53. Without settlement of these preference claims, the Trustee would face contentious and drawn out litigation with the Debtor's pre-petition creditors that would dwindle the assets of the Debtor's estate. Moreover, the settlements negotiated by Polsinelli ensure there are immediate funds available to the Trustee to administer the Debtor's estate and provide payments on creditors' claims.

54. Pursuant to its retention application, Polsinelli is entitled to fees of: (i) $227,222.10 for the Escrow Litigation, (ii) $130,830.64 for a release of liens on the modem receipts, (iii) $380,530.53 for the RUS Litigation, (iv) $396,282.95 for the OEP litigation, and

(v) $56,700 for preference recoveries. Accordingly, the total sum due to Polsinelli for professional services rendered on behalf of the Trustee for the Interim Compensation Period is $1,238,773.10. Polsinelli submits that the professional services it rendered on behalf of the Trustee were reasonable and necessary under the circumstances and conferred a great benefit to the bankruptcy estate.

55. To further benefit the estate, Polsinelli has agreed with the Chapter 7 Trustee to reduce the amount of compensation to Polsinelli will receive from the OEP Litigation to a flat amount of $300,000.00, which is a reduction of $96,282.95 from the fee originally calculated by Polsinelli. This number is an agreed upon amount between the Chapter 7 Trustee and Polsinelli. Polsinelli believes this is a fair compromise between the parties that will inure to the benefit of the bankruptcy estate.

56. Polsinelli also expended costs on behalf of the Trustee during the Interim Compensation Period in the sum of $47,206.88, 100% of which will be due and payable immediately upon approval of this Application. Polsinelli had minimal expenses related to the OEP litigation that will be included in the flat amount it has agreed to accept on such litigation. In accordance with Rule 2016-2(e)(iii) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), all copying charges are billed at no more than $0.10 per page.

57. The undersigned attests that he has reviewed the requirements of Local Rule 2016-1 and this Application conforms to such requirements.

2305646.2

WHEREFORE, Polsinelli requests that the Court approve the Application, pursuant to 11 U.S.C. §§ 330 and 331, granting it (i) interim compensation for professional services rendered and reimbursement of expenses for the period of March 15, 2012 through December 31, 2012 in the amount of $1,142,490.15, and (ii) such other and further relief as this Court deems just and proper.

Dated:  January 17, 2013
Wilmington, Delaware

**POLSINELLI SHUGHART PC**

 /s/ Christopher A. Ward
Christopher A. Ward (Del. Bar No. 3877)
Jarrett Vine (Del Bar No. 5400)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
302-252-0920
302-252-0921 (fax)
cward@polsinelli.com
jvine@polsinelli.com

- and -

Todd H. Bartels (*admitted pro hac vice*)
Seth Wright (*admitted pro hac vice*)
3101 Frederick Avenue
St. Joseph, Missouri 64506
816-364-2117
816-279-3977 (fax)
tbartels@polsinelli.com
swright@polsinelli.com

SPECIAL LITIGATION COUNSEL FOR CHARLES M. FORMAN, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR OPEN RANGE COMMUNICATIONS, INC.

2305646.2